**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| MICHELLE ENGLES, | NO. |
| Plaintiffs, | COMPLAINT FOR DAMAGES, |
| v. | INJUNCTIVE RELIEF, AND |
| CROSSROADS HOUSING, INC., CITY OF SHELTON, CALVIN MORAN, JUSTIN WHITLEY, CHRIS DOWNS, and GARY PORTILLO | DECLARATORY JUDGMENT |
| Defendants. | |

Plaintiff Michelle Engles alleges as follows:

## I.  INTRODUCTION

In 2022, Michelle Engles and her now-deceased husband were homeless after losing their home of twelve years. In need of housing, they sought and received assistance from Defendant Crossroads Housing ("Crossroads"). Crossroads is a provider of homelessness and housing assistance to needy individuals in Mason County, using funding received from the State of Washington to meet these needs. Crossroads and Ms. Engles entered into a rental agreement under which Ms. Engles agreed to pay monthly rent, just like any other renter.

After two years, Crossroads decided that Ms. Engles was not a suitable tenant and that it no longer wished to rent to her. However, instead of going through the unlawful detainer process,

**Northwest Justice Project**
711 Capitol Way S, Ste 704
Olympia, WA  98501
Tel. (360) 753-3610  Fax (360) 753-0174

1  Crossroads simply called local law enforcement at the City of Shelton Police Department and

2  instructed them to remove Ms. Engles from her home.

3      Shelton's police department complied with Crossroads' request, came to Ms. Engles's

4  home several times along with Crossroads' staff, and informed her she was trespassing and

5  would be arrested if she did not leave. Without a warrant, the police entered her home on

6  February 22, 2024, arrested her, and told her not to return. Ms. Engles spent the next five nights

7  sleeping in her car in temperatures that dipped close to freezing. Officers Moran and Whitley

8  belittled and harassed Ms. Engles throughout the episode, referring to her as a "ding dong," a

9  "slow learner," and "a waste of time" because she told them that what they were doing was

10  illegal.

11      Washington and federal law are clear. Neither landlords nor local law enforcement may

12  trespass and arrest a tenant simply because they no longer wish to continue renting to that tenant.

13  Defendant City of Shelton and its officers violated Ms. Engles's rights when they threatened her

14  with arrest if she didn't leave her home, insulted and mocked her, entered her home without a

15  warrant, and ultimately arrested her and removed her from her home. The City's policies and

16  practices and lack of training permitted these violations to occur. Crossroads, the city, and the

17  city's officers are liable to Ms. Engles for the harms caused by this arrest and wrongful eviction.

18                              **II. PARTIES**

19      1. Ms. Engles is a 61-year-old resident of Mason County, Washington.

20      2. Defendant Crossroads Housing, Inc. ("Crossroads") is a Washington non-profit

21  organization that is headquartered in and does business in Mason County, Washington.

22      3. Defendant City of Shelton ("Shelton") is a municipality and a political subdivision in

23  Mason County, in the State of Washington.

24

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF,
AND DECLARATORY JUDGMENT- 2

**Northwest Justice Project**
711 Capitol Way S, Ste 704
Olympia, WA  98501
Tel. (360) 753-3610  Fax (360) 753-0174

1    4. Defendant Calvin Moran is an officer of the City of Shelton police department. He is

2    sued in his personal capacity. All acts alleged by him are alleged to have been taken under color

3    of state law.

4    5. Defendant Justin Whitley is an officer of the City of Shelton police department. He is

5    sued in his personal capacity. All acts alleged by him are alleged to have been taken under color

6    of state law.

7    6. Defendant Chris Downs is an officer of the City of Shelton police department. He is

8    sued in his personal capacity. All acts alleged by him are alleged to have been taken under color

9    of state law.

10    7. Defendant Gary Portillo is an officer of the City of Shelton police department. He is

11    sued in his personal capacity. All acts alleged by him are alleged to have been taken under color

12    of state law.

### III.  JURISDICTION AND VENUE

14    8. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and

15    1367. Plaintiff brings this action under 42 U.S.C. § 1983, to vindicate rights established by the

16    Fourth and Fourteenth Amendments of the United States Constitution.

17    9. Plaintiff also seeks relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, and

18    2202.

19    10.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant

20    to 28 U.S.C. § 1367, as these claims are related to Plaintiff's federal claims, arise out of a

21    common nucleus of operative facts, and form part of the same case or controversy as Plaintiff's

22    federal claims.

23

24

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF,
AND DECLARATORY JUDGMENT- 3

**Northwest Justice Project**
711 Capitol Way S, Ste 704
Olympia, WA  98501
Tel. (360) 753-3610  Fax (360) 753-0174

11.     Venue in this action is proper in the District of Western Washington under 28 U.S.C. § 1391(b), as the Defendants are located in the District of Western Washington and all events and/or omissions giving rise to the claims complained of herein, have occurred or will occur, in this district.

## IV.  FACTS

**Ms. Engles's tenancy with Crossroads Housing**

12.     Ms. Engles is 61 years old and lives with disabilities. One of these affects her motor control and mobility.

13.     Ms. Engles and her husband, who is now deceased, were homeless from 2021 until 2022. In 2022 they entered Crossroads' Housing Program.

14.     Ms. Engles and her husband had previously been living in a rental home in Pierce County for twelve years. They became homeless after the owner sold the home. Ms. Engles's husband was terminally ill, and Ms. Engles was providing full-time care for him.

15.     Crossroads is one of the main providers of housing to homeless individuals in Mason County.

16.     Crossroads receives Consolidated Homeless Grant (CHG) funds from the Washington Department of Commerce. CHG funds homelessness response systems that support community efforts to end homelessness.

17.     Recipients of CHG funds are required to provide households receiving rent assistance with information on the Washington Residential Landlord Tenant Act (RLTA).

18.     On April 12, 2022, Ms. Engles and her husband signed a rental agreement with Crossroads (the "Rental Agreement").

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF,
AND DECLARATORY JUDGMENT- 4

**Northwest Justice Project**
711 Capitol Way S, Ste 704
Olympia, WA  98501
Tel. (360) 753-3610  Fax (360) 753-0174

19.     Crossroads rented a one-bedroom apartment at 822-D W. Cota St., Shelton, Washington ("the home") to Ms. Engles. The Rental Agreement referred to Crossroads as the landlord and Ms. Engles as the tenant.

20.     Under the Rental Agreement, rent was $1,126 per month.

21.     The Rental Agreement obligated Ms. Engles to pay a portion of the rent, based on her monthly income.

22.     The Rental Agreement obligated Ms. Engles to pay utilities.

23.     Under the Rental Agreement, the remainder of rent was paid to Crossroads through the CHG Rental Assistance Program.

24.     The Rental Agreement required payment of a security deposit of $2,252.

25.     The home is in a small apartment building in which all of the units open directly into a shared courtyard.

26.     Ms. Engles's husband passed away shortly after they moved in, on July 25, 2022.

27.     After Ms. Engles's husband died, her community consisted almost entirely of her neighbors who lived in her apartment building, and a few people who lived in other housing managed by Crossroads.

28.     On January 22, 2024, Crossroads issued a notice to Ms. Engles terminating her tenancy on February 19, 2024, due to alleged violations of the Rental Agreement.

29.     The notice threatened Ms. Engles with trespass and forcible removal by the police if she did not vacate by February 19, 2024.

30.     On February 12, 2024, Crossroads issued a notice of inspection to Ms. Engles. The notice stated that Crossroads would be doing a monthly inspection of Ms. Engles's home. The notice also stated that "In accordance with the Landlord Tenant Act, Tenant agrees to allow

the landlord the right to enter the premises, at reasonable hours, after a minimum forty-eight hour written notice."

31. On or about February 19, 2024, an employee of Crossroads contacted the Shelton Police Department to request that they remove Ms. Engles from her home.

32. Crossroads provided the Shelton Police Department with a copy of the Rental Agreement.

**February 19, 2024, attempt by Shelton Police and Crossroads to force Ms. Engles to leave her home without a warrant or eviction order**

33. On February 19, 2024, two Crossroads' employees, Carrie and Tiffany, and two Shelton police officers, Officer Chris Downs and Officer Gary Portillo, met at Ms. Engles's apartment building.

34. Prior to going to Ms. Engles's home, Carrie and Tiffany and the police officers conferred with each other in the parking area in front of the apartment building.

35. Officer Downs told Carrie and Tiffany that he was aware of Ms. Engles's situation because she had called him after receiving the notice.

36. Carrie or Tiffany told the police that Ms. Engles had written a letter to the director of Crossroads explaining why she should not be removed.

37. Carrie or Tiffany told the police that Ms. Engles had posted a document on her door stating she was protected by law from anyone entering her home. Carrie or Tiffany said that they had removed that sign earlier and that they had a key with them.

38. Officer Portillo asked if Crossroads wanted Ms. Engles arrested if Ms. Engles refused to leave. They said that if Ms. Engles did not vacate after the forty-eight-hour notice expired, Crossroads wanted the police to arrest Ms. Engles.

39.     Officer Portillo asked if Crossroads planned to give Ms. Engles the forty-eight-hour notice that day.

40.     Carrie or Tiffany said they wanted the police to talk to Ms. Engles first and to only then give Ms. Engles the final forty-eight-notice as a last resort if she refused to vacate.

41.     Carrie or Tiffany said this was not the first time they had worked with the Shelton Police Department to remove a resident of Crossroads' housing.

42.     Carrie, Tiffany, and the police officers went to Ms. Engles's home and told Ms. Engles she needed to vacate.

43.     Officer Portillo told Ms. Engles that Crossroads had every right to enter her home.

44.     Officer Portillo told Ms. Engles that landlord/tenant laws did not apply to her.

45.     Ms. Engles told the police and Crossroads staff that an attorney at the Northwest Justice Project told her she was a tenant, that this was a civil matter, and that she could not be removed except with a court order.

46.     Ms. Engles told the police that the attorney instructed her to give the police a copy of the landlord/tenant act.

47.     Officer Portillo said he already had the paperwork and that if Ms. Engles did not comply with Crossroads' demand to leave, she would be arrested.

48.     Officer Portillo said he was basing his determination on the fact that Crossroads told him that Ms. Engles was not protected by landlord/tenant laws.

49.     Officer Downs then told Ms. Engles that she had never signed a lease. Ms. Engles countered that she had signed a lease.

50.     Officer Downs said to Ms. Engles that Crossroads would "give you forty-eight hours to pack it up and be out of here. If you don't, we're going to come back and we're going to

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF,
AND DECLARATORY JUDGMENT- 7

physically arrest you for trespassing. And you will go to jail, and then the Northwest whatever it is can assist you all they want."

51.    Officer Downs told Ms. Engles "this is not the first instance that we've had to deal with this. This is how it works. This does not fall under the Landlord-Tenant Act."

52.    Officer Portillo instructed Crossroads to post the forty-eight hour notice, said he would provide Crossroads with a case number, and asked Crossroads to call the police once the notice had been served.

53.    Later that day, a Crossroads employee returned to Ms. Engles's home and told Ms. Engles to open her door.

54.    Ms. Engles refused and told the employee to tape the notice to her door or leave it on her doormat.

55.    The Crossroads employee instead opened Ms. Engles's door and entered Ms. Engles's home to deliver the 48-hour notice.

56.    The 48-hour notice stated the following:

a.    The notice was Ms. Engles's final notice to vacate by 10 a.m. on February 22, 2024;

b.    Ms. Engles's "month-to-month tenancy was vacated" by the earlier notice issued on January 22, 2024; and

c.    "RCW 59.18 Landlord Tenant Law does NOT apply to any program participant."

**<u>Ms. Engles alerts Crossroads and the Shelton Police that they need a court order to remove her</u>**

57.    The next day, February 20, 2024, Thurston County Volunteer Legal Services (TCVLS) emailed Crossroads' executive director, Tanya Frazier, a letter informing Crossroads

1    that Ms. Engles was a tenant who could not be removed by force, and that she could only be

2    removed by court order.

3        58.    Ms. Engles also emailed the TCVLS letter to Ms. Frazier on February 21, 2024.

4        59.    On February 21, 2024, Ms. Frazier responded to TCVLS and stated that they were

5    going to continue moving forward with termination of Ms. Engles from their program due to her

6    violations of the program participant agreement.

7        60.    On February 21, 2024, Ms. Engles emailed the Shelton Police Department to alert

8    them that officers had threatened to arrest her if she did not vacate by February 22, 2024. Ms.

9    Engles also attached TCVLS's letter to the email to the Shelton Police Department.

10       61.    On or about February 21, 2024, Ms. Engles also called the Shelton Police

11   Department and left a voicemail to make a complaint about Officer Downs's and Officer

12   Portillo's threats to arrest her.

13   **The Shelton Police arrest Michelle Engles at the behest of Crossroads**

14       62.    On February 22, 2024, Crossroads' staff again contacted the Shelton Police

15   Department to report that Ms. Engles was trespassing.

16       63.    Sergeant Calvin Moran and Officer Justin Whitley responded to Crossroads' call

17   and went to Ms. Engles's home.

18       64.    Ms. Engles told the responding officers that she had made a complaint to the

19   police department.

20       65.    Ms. Engles said she had called the chief and that she wanted to call the captain to

21   make a complaint.

22       66.    Sergeant Moran said the captain was out of the office for the next week and a

23   half, that the chief was out of the office, and that he was the head supervisor on duty.

24

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF,
AND DECLARATORY JUDGMENT- 9

67.     Sergeant Moran stated that because he was the supervisor on duty, he had come down to see Ms. Engles because he wanted to take the situation on head-on.

68.     Sergeant Moran stated that Crossroads had called the Shelton Police, that he had dealt with Crossroads before, and that this was Crossroads' Housing.

69.     Sergeant Moran told Ms. Engles that she had signed up for Crossroads Housing and that they could kick her out for violating their rules.

70.     Sergeant Moran told Ms. Engles "this isn't Park Street Apartments. This isn't a real estate thing." He said that Ms. Engles could be kicked out without a court order.

71.     Sergeant Moran told Ms. Engles that she needed to leave or she would be arrested for trespassing and would go to jail.

72.     Sergeant Moran told Ms. Engles that he was waiting for a Crossroads staff person to arrive because he needed Crossroads to say in front of him that Crossroads wanted Ms. Engles to leave.

73.     A Crossroads employee, Carrie, who had also been present on February 19, 2024, arrived and told Ms. Engles that she was not protected by landlord/tenant laws and needed to leave.

74.     Sergeant Moran also stated that Crossroads was not covered under the Residential Landlord Tenant Act and that Ms. Engles could be removed via criminal trespass laws.

75.     Sergeant Moran and Officer Whitley both noted that Ms. Engles had her own furniture in her home.

76.     Carrie said that Crossroads' director, Ms. Frazier, would be arriving soon to change the locks.

77.     Sergeant Moran said that it was Ms. Frazier who had spoken with him earlier.

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF,
AND DECLARATORY JUDGMENT- 10

78. Sergeant Moran asked Carrie, in front of Ms. Engles, what would happen to Ms. Engles's belongings if he arrested Ms. Engles and took her into custody.

79. Carrie said that Crossroads would store her belongings for seven days and then get rid of them because Crossroads could not pay for fees.

80. Carrie also told Ms. Engles that she was hesitant to haul and store Ms. Engles's belongings because Ms. Engles had been uncooperative.

81. Carrie said that Ms. Engles had received more than enough notice.

82. Officer Whitley agreed and said she had received "more than enough for an adult to be an adult and make adult decisions."

83. Ms. Engles repeatedly told Sergeant Moran and Officer Whitley that she was a tenant, that this was a civil matter, and that she could not be evicted without a court order.

84. Ms. Engles showed Officer Moran the letter from TCVLS explaining that if Crossroads wanted to remove her, they needed to go through a civil eviction process.

85. Sergeant Moran refused to read the letter.

86. Ms. Engles also tried to show Sergeant Moran the emails between TCLVS, Crossroads, and herself, discussing the legality of removing her from the home without a court order.

87. Sergeant Moran said that he didn't care about her email and refused to read it.

88. Sergeant Moran told Ms. Engles that she was a "pain in the neck" and that she had not "even put a pair of socks in a box."

89. Sergeant Moran again told Ms. Engles that she needed to pack up and leave or face arrest. Ms. Engles again stated that this was illegal without a court order. Sergeant Moran stated he was not following that. He told Ms. Engles that if she thought she had a claim, she

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF,
AND DECLARATORY JUDGMENT- 11

**Northwest Justice Project**
711 Capitol Way S, Ste 704
Olympia, WA  98501
Tel. (360) 753-3610  Fax (360) 753-0174

could file it through her attorney. He asked Ms. Engles if she was looking for a big paycheck from the City.

90.     Sergeant Moran said that if Ms. Engles walked out on her own, and the locks were changed, he would not press charges.

91.     Officer Whitley asked Ms. Engles if she had any diagnosed disabilities that would make it difficult for her to read. Ms. Engles said she had two disabilities.

92.     At some point in the interaction, Ms. Engles asked if she could use her bathroom. While she was using the bathroom, Sergeant Moran discussed with Officer Moran and Crossroads' staff what he would do if Ms. Engles locked herself in the apartment. He stated he would have to kick the door in. Crossroads staff told him that they had an extra key.

93.     Ms. Engles asked for a few more minutes to pack.

94.     Carrie told Sergeant Moran and Officer Whitley that she had provided Crossroads' rules and procedures to the police.

95.     Sergeant Moran said that he had "done this" before, to the point of telling people to put their belongings on the curb or he would remove their belongings and arrest them.

96.     Carrie showed Sergeant Moran and Officer Whitley a document that Ms. Engles had taped to her door earlier in the week. The document said not to enter and listed RCW 59.18 (the RLTA).

97.     Officer Whitley said that it was not a real RCW.

98.     Carrie said she knew it was not real, that she had removed it and had laughed at it.

99.     Officer Whitley said Crossroads had been more than gracious towards Ms. Engles.

100.    Ms. Engles then sat on the couch and stated she was not leaving.

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF,
AND DECLARATORY JUDGMENT- 12

**Northwest Justice Project**
711 Capitol Way S, Ste 704
Olympia, WA  98501
Tel. (360) 753-3610  Fax (360) 753-0174

101.    Sergeant Moran entered the apartment.

102.    Officer Whitley also stepped into the apartment.

103.    Sergeant Moran told Ms. Engles that she was under arrest, that she had the right to ask for counsel, and had her place her hands behind her back.

104.    Officer Whitley picked up Ms. Engles's purse. Ms. Engles told him to give her back her purse. Officer Whitley responded that she could have it back once she was out of handcuffs.

105.    Sergeant Moran led Ms. Engles out of her home and to the police car.

106.    Ms. Engles left her home with her purse, a small suitcase, and a jacket. She left behind all her other possessions.

107.    After arresting Ms. Engles, Sergeant Moran told Crossroads to change the locks.

108.    Once at the car, Sergeant Moran and Officer Whitely told Ms. Engles that they were not going to arrest her after all. But Sergeant Moran told Ms. Engles that she was prohibited from returning to her home and if she tried to do so, she would be arrested for trespassing and burglary.

109.    This frightened Ms. Engles and she did not return to her home.

110.    Ms. Engles told the officers she did not have anywhere to go. One of the officers told Ms. Engles to stay with a friend or family. Ms. Engles said her only friend was in Tacoma and she could not drive there due to a suspended license. The officer told her to just leave and he would look the other way.

111.    Sergeant Moran returned to the home and confirmed with a Crossroads staff member that the locks had been changed on the home, then told Crossroads that he was going to "kick [Ms. Engles] to the curb."

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF,
AND DECLARATORY JUDGMENT- 13

**Northwest Justice Project**
711 Capitol Way S, Ste 704
Olympia, WA  98501
Tel. (360) 753-3610  Fax (360) 753-0174

112.    Crossroads was aware that Ms. Engles did not have any other home or shelter available to her.

113.    Officers Moran and Whitley frequently insulted, belittled and threatened Ms. Engles during the encounter that resulted in her being escorted away from her own home:

    a.  Sergeant Moran told Ms. Engles she was a "waste of time and a waste of city resources" because she refused to leave.

    b.  Sergeant Moran told Ms. Engles "the only two fricking cops on in town are babysitting you because you couldn't get your act together."

    c.  Sergeant Moran told Ms. Engles that arresting her would be an "easy stat."

    d.  Sergeant Moran gave Ms. Engles 15 minutes to pack up her suitcase.

    e.  Officer Whitley said Ms. Engles was a "slow learner."

    f.  Officer Whitley said "Nisqually sounds nice," in reference to the Nisqually Corrections Center.

    g.  Officer Whitley again referenced Nisqually, a threat that she may go to jail for refusing to leave her own home.

    h.  Officer Whitley called Ms. Engles a "ding dong" when she told him to return her purse.

    i.  Officer Whitley told Ms. Engles that she was "not very good at making choices."

    j.  Officer Whitney said it was as if Ms. Engles had never been told no before.

    k.  Officer Whitley said that Ms. Engles had not done anything to help herself and that people like her cannot be helped.

    l.  Officer Whitley said that Ms. Engles was "taking advantage of an opportunity."

114.    After the officers led Ms. Engles out of her home, Ms. Engles saw the officers and the Crossroads staff enter her home.

115.    Ms. Engles hyperventilated from the stress of what had just happened. She told the officers that she was having a panic attack. She had been arrested and believed she was going to jail. She had just been forcibly removed from, and prohibited from returning to, her only home. She had to use her inhaler to get her breathing back under control. She also was experiencing "fits" due to an underlying health condition, chorea, which causes involuntary, unpredictable muscle movements.

116.    All of the Defendants' actions on the day Ms. Engles was removed under threat of arrest happened in full view and hearing of Ms. Engles's neighbors, some of whom were outside watching.

117.    Starting February 22, 2024, Ms. Engles spent the next five days living and sleeping in her car. Several of the nights the temperature dropped below freezing or close to freezing.

118.    The only warmth Ms. Engles had was from a throw-blanket and from starting her car at night. She spent about $60 in gas just keeping the car warm at night.

119.    Ms. Engles developed a respiratory infection from sleeping in her car. She also experienced worsening symptoms of her chorea.

120.    Ms. Engles, through her attorney, demanded that Crossroads provide Ms. Engles with a key and restore her to possession of her home.

121.    On February 27, 2024, Crossroads agreed to let Ms. Engles back into her home.

122.    On February 28, 2024, Crossroads issued an eviction notice against Ms. Engles stating that she had "aged out" of their transitional housing program.

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF,
AND DECLARATORY JUDGMENT- 15

**Northwest Justice Project**
711 Capitol Way S, Ste 704
Olympia, WA  98501
Tel. (360) 753-3610  Fax (360) 753-0174

123.    On April 9, 2024, Crossroads filed a civil lawsuit in Mason County Superior Court against Ms. Engles seeking an eviction writ.

124.    On May 6, 2024, a Mason County Superior Court judge signed the eviction writ. Ms. Engles appealed.

125.    Ms. Engles and Crossroads reached an agreement whereby she could remain in the home until July 1, 2024, if she dismissed the appeal of the eviction. Under the agreement, Ms. Engles agreed that, after July 1, she would be restrained from coming within 100 feet of Crossroads housing property, including the building in which she had lived.

126.    On July 3, 2024, Crossroads posted a letter on the doors of all apartments run by Crossroads. The letter stated the following:

    a.  Crossroads had obtained a "non-trespass order" against Ms. Engles and that the order had been served upon Ms. Engles on July 1, 2024.

    b.  Ms. Engles would be arrested and charged if she returned to Crossroads' property.

    c.  Ms. Engles was leasing a U-Haul in which Crossroads believed Ms. Engles was living.

    d.  Permitting Ms. Engles on Crossroads Housing property or storing her belongings would place residents in contempt of the no trespass order, subject them to prosecution, and place their housing in jeopardy.

127.    Crossroads did not obtain a trespass order against Ms. Engles, nor was one ever served upon her.

128.    Soon after Crossroads posted this letter, Ms. Engles called a friend who lived in Crossroads' housing to ask her to have coffee or lunch. The friend said she was afraid if she did, she would lose her housing.

129.    Ms. Engles felt humiliated by Defendants' treatment of her. She also felt banished from the only community of people she knew in Shelton, the people living in Crossroads housing.

130.    Neither Sergeant Moran nor Officer Whitley obtained a warrant before entering Ms. Engles's home on February 22, 2024.

131.    Neither Sergeant Moran nor Officer Whitley attempted to obtain a warrant before entering Ms. Engles's home on February 22, 2024.

132.    Crossroads was aware of Ms. Engles's disabilities when they contacted the police to ask them to remove Ms. Engles from her home.

133.    Crossroads did not obtain a writ of restitution for possession of Ms. Engles's home prior to February 22, 2024.

134.    Crossroads did not attempt to obtain a writ of restitution for possession of Ms. Engles's home prior to February 22, 2024.

135.    Defendant City of Shelton's Police Department has the following policy: "Disputes over possession or occupancy of real property (e.g., land, homes, apartments) should generally be handled through a person seeking a court order."

136.    Upon information and belief, when Crossroads removed Ms. Engles by using Shelton police, it was not the first time that the Shelton Police Department had removed a tenant from their dwelling at the request of Crossroads.

137.    Upon information and belief, Crossroads has requested and received assistance from the Shelton Police Department to remove other tenants from their properties.

138.    Upon information and belief, Sergeant Moran, as acting head supervisor, had final policymaking authority when he decided to forcibly remove and arrest Ms. Engles.

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF,
AND DECLARATORY JUDGMENT- 17

**Northwest Justice Project**
711 Capitol Way S, Ste 704
Olympia, WA  98501
Tel. (360) 753-3610  Fax (360) 753-0174

139. The City has a policy or custom of authorizing or permitting police officers to forcibly remove tenants from their homes at the request of landlords seeking to be restored to possession of the home.

140. The City has a pattern and practice of not properly training officers on the rights granted by a tenancy, what constitutes a tenancy, and that landlords must always use a civil court process in order to regain possession of a rental home.

141. Plaintiff delivered, via her attorneys, a notice of claim as required by state law for state claims to the City on May 23, 2024. More than sixty days have passed and the City has not meaningfully satisfied Ms. Engles's demand.

## V.  CAUSES OF ACTION

**A.  First Cause of Action: Denial of Plaintiff's Procedural Due Process (42 U.S.C. § 1983) (As to all Defendants)**

142. Plaintiff reasserts and re-alleges the allegations set forth above.

143. Plaintiff had a protected liberty interest in the continued use of the home until such time as she received reasonable notice and either vacated or were ordered to vacate by a court.

144. Defendant City of Shelton failed to provide Plaintiff with procedural due process. Defendant deprived Plaintiff of her liberty interest by authorizing or permitting police officers of the City of Shelton to trespass Plaintiff from her home upon the demand of her landlord, Defendant Crossroads.

145. Defendant City of Shelton failed to provide Plaintiff with procedural due process because Defendant City of Shelton offered her no opportunity for a meaningful hearing prior to

evicting her from the home, nor did Defendant City of Shelton offer Plaintiff any post-deprivation due process.

146.    Defendant City of Shelton's lack of procedures for determining whether Plaintiff had a legal right not to be forcibly removed from her home violated Plaintiff's rights to procedural due process because it created an unreasonable risk of erroneous deprivation.

147.    Defendant City of Shelton's practice of investing investigative and adjudicative functions in police enforcing a trespass request from a landlord, without any process to appeal the decision to an impartial decision maker, violated Plaintiff's rights to procedural due process.

148.    Defendant Crossroads acted under color of state law when they conspired with Defendants City of Shelton, Sergeant Moran, Officer Whitley, Officer Downs and Officer Portillo to unlawfully arrest Plaintiff and remove her from her home rather than seek her removal through a civil eviction process.

149.    Under color of state law, Defendant City of Shelton's authorized policymaker approved this violation, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

150.    Under color of state law, the City has a policy or custom of failing to provide for post-deprivation due process, including a meaningful and adequate hearing capable of restoring the accused's property interest, in violation of the Due Process Clause of the Fourteenth Amendment to the United State Constitution.

151.    Under color of state law, Sergeant Moran deprived Plaintiff of her due process rights when he summarily and erroneously determined that she lacked possessory interests in the home.

152.    Under color of state law, Officer Whitley deprived Plaintiff of her due process rights when he summarily and erroneously determined that she lacked possessory interests in the home.

153.    Under color of state law, Officer Downs deprived Plaintiff of her due process rights when he summarily and erroneously determined that she lacked possessory interests in the home.

154.    Under color of state law, Officer Portillo deprived Plaintiff of her due process rights when he summarily and erroneously determined that she lacked possessory interests in the home.

155.    The Defendants' actions deprived Plaintiff of rights, privileges, or immunities secured to her by the United States Constitution and statutes or regulations in violation of 42 U.S.C. § 1983.

156.    Plaintiff is likely to be harmed by this policy again in the future because she lacks housing stability, is currently homeless, and is reliant on rental housing.

157.    Plaintiff is harmed as a result and is entitled to equitable relief and damages from Defendants.

**B.    Second Cause of Action: Violation of Plaintiff's 14th Amendment Right to Substantive Due Process by exposing her to a state-created danger (42 U.S.C. § 1983) (As to Defendant Crossroads, Defendant City of Shelton, Defendant Whitley and Defendant Moran)**

158.    Plaintiff reasserts and re-alleges the allegations set forth above.

159.    Plaintiff had a liberty interest in her bodily security protected by the Fourteenth Amendment of the United States Constitution.

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF,
AND DECLARATORY JUDGMENT- 20

160.     Defendant Whitley and Defendant Moran violated Plaintiff's liberty interest in bodily security when they wrongfully removed her from her home, leaving her with no shelter except for her car.

161.     Defendant Whitley's and Defendant Moran's actions left Plaintiff in a situation more dangerous than the one in which they found her.

162.     Defendant Whitley and Defendant Moran were aware that Plaintiff had no shelter other than her car when they removed her from her home, and they acted with deliberate indifference to this fact.

163.     Defendant Crossroads was aware that Plaintiff had no other shelter than her car when they conspired with Defendant Whitley and Defendant Moran to remove Plaintiff from her home.

164.     Defendant City of Shelton deprived Plaintiff of her liberty interest by authorizing or permitting police officers of the City of Shelton to trespass Plaintiff from her home upon the demand of her landlord, Defendant Crossroads.

165.     Under color of state law, Defendant City of Shelton's authorized policymaker approved this violation, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

166.     Defendant City of Shelton has a policy or custom of authorizing or permitting removal of tenants from their homes without offer of shelter.

167.     Defendant Crossroads acted under color of state law when they conspired with Defendants City of Shelton, Sergeant Moran to remove Plaintiff from her home when she had no other shelter available to her.

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF,
AND DECLARATORY JUDGMENT- 21

**Northwest Justice Project**
711 Capitol Way S, Ste 704
Olympia, WA  98501
Tel. (360) 753-3610  Fax (360) 753-0174

168.    The Defendants' actions deprived Plaintiff of rights, privileges, or immunities secured to her by the United States Constitution and statutes or regulations in violation of 42 U.S.C. § 1983.

169.    Plaintiff was harmed after being left homeless by Defendants as alleged herein.

170.    Plaintiff is likely to be harmed by this policy again in the future because she lacks housing stability, is currently homeless, and is reliant on rental housing.

171.    Plaintiff is harmed as a result and is entitled to equitable relief and damages from Defendants.

**C.   Third Cause of Action: Violation of Plaintiff's Rights under the Fourth Amendment (Section 1983) (As to Defendant Crossroads, Defendant City of Shelton, Defendant Whitley and Defendant Moran)**

172.    Plaintiff reasserts and re-alleges the allegations set forth above.

173.    Plaintiff had a right to be free of warrantless search and seizure while within her own home.

174.    Defendant Whitley and Defendant Moran violated Plaintiff's Fourth Amendment rights when they entered her home, took her purse without her consent, arrested her and removed her from her home without a warrant or probable cause.

175.    Defendant Crossroads acted under color of state law when they conspired with Defendants City of Shelton, Sergeant Moran, and Officer Whitley to unlawfully arrest Ms. Engels and remove her from her home.

176.    Under color of state law, Defendant City of Shelton's authorized policymaker approved this violation, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

177.    Defendant City of Shelton has a policy or custom of authorizing or permitting warrantless search and seizure of tenants at the request of their landlords.

178.     Under color of state law, Sergeant Moran violated Plaintiff's Fourth Amendment rights when he entered her apartment and arrested her without a warrant.

179.     Under color of state law, Officer Whitley violated Plaintiff's Fourth Amendment rights when he entered her apartment and seized her purse without a warrant.

180.     The Defendants' actions deprived Plaintiff of rights, privileges, or immunities secured to her by the United States Constitution and statutes or regulations in violation of 42 U.S.C. § 1983.

181.     Plaintiff is likely to be harmed by this policy again in the future because she lacks housing stability, is currently homeless, and is reliant on rental housing.

182.     Plaintiff is harmed as a result and is entitled to equitable relief and damages from Defendants.

**D.     Fourth Cause of Action: Violation of rights guaranteed by Washington Constitution, Art.1, Sec. 7 (As to Defendant Crossroads, Defendant City of Shelton, Defendant Whitley and Defendant Moran)**

183.     Plaintiff reasserts and re-alleges the allegations set forth above.

184.     The Court has jurisdiction to hear this state law claim under 28 USC § 1367 because it arises from the same set of facts that give rise to jurisdiction under Plaintiff's federal claims.

185.     Defendants violated Plaintiff's Article 1, Section 7 rights when they entered her home, took her purse without her consent, arrested her and removed her from her home without a warrant or probable cause.

186.     Defendant Crossroads conspired with Defendants City of Shelton, Sergeant Moran and Officer Whitley to unlawfully arrest Ms. Engels and remove her from her home.

187.     Defendant Moran violated Plaintiff's rights under the Washington Constitution as alleged above.

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF,
AND DECLARATORY JUDGMENT- 23

**Northwest Justice Project**
711 Capitol Way S, Ste 704
Olympia, WA  98501
Tel. (360) 753-3610  Fax (360) 753-0174

188.     Defendant Whitley violated Plaintiff's rights under the Washington Constitution as alleged above.

189.     Plaintiff is likely to be harmed by this policy again in the future because she lacks housing stability, is currently homeless, and is reliant on rental housing.

190.     Plaintiff is harmed as a result and is entitled to equitable relief against Defendant City of Shelton and Defendant Crossroads.

E.     **Fifth Cause of Action: Wrongful eviction in violation of RCW 59.18.650 and state common law (as to all Defendants)**

191.     Plaintiff reasserts and re-alleges the allegations set forth above.

192.     The Court has jurisdiction to hear this state law claim under 28 USC § 1367 because it arises from the same set of facts that give rise to jurisdiction under Plaintiffs' federal claims.

193.     Defendant Crossroads had a duty under the Residential Landlord Tenant Act (RLTA) to comply with its requirements, specifically to only evict Plaintiff for good cause, after issuing one of the statutorily required notices, and then going through a civil court process after expiration of that notice to seek an eviction writ. RCW 59.18.650(2).

194.     Defendants also have a duty under Washington common law not to evict a renter without a lawful court order and are liable for the harm they cause when a tenant is injured in violation of that duty.

195.     Defendants City of Shelton, Defendant Moran, Defendant Whitley, Defendant Downs and Defendant Portillo acted as agents for Defendant Crossroads when they illegally removed Plaintiff from her home.

196.   Defendants violated both the statutory and common law duties by failing to utilize the process required by the RTLA and instead causing Plaintiff to be removed by law enforcement as a trespasser.

197.   Ms. Engles is harmed by Defendants' actions and is entitled under RCW 59.18.650(4) to her economic and noneconomic damages in an amount to be proven at trial, costs and attorneys' fees.

**F.   Sixth Cause of Action: Unlawfully summoning a law enforcement officer in violation of RCW 4.24.345 (as to Defendant Crossroads)**

198.   Plaintiff reasserts and re-alleges the allegations set forth above.

199.   The Court has jurisdiction to hear this state law claim under 28 USC § 1367 because it arises from the same set of facts that give rise to jurisdiction under Plaintiff's federal claims.

200.   A person may bring a civil action for damages against any person who knowingly causes a law enforcement officer to arrive at a location to contact another person with the intent to infringe on their rights under the Washington or United States Constitution or cause the person to be expelled from a place in which the other person is lawfully located.

201.   Defendant Crossroads, through its employees, violated RCW 4.24.345 when it unlawfully summoned law enforcement to deprive Ms. Engles of her tenancy, in violation of the United States and Washington constitutions.

202.   Defendant Crossroads was not acting in good faith when they contacted law enforcement.

203.   Ms. Engles is harmed by Defendant Crossroads' actions and is entitled under RCW 4.24.345(3) to recover (a) the greater of (i) economic and noneconomic damages; or (ii)

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF,
AND DECLARATORY JUDGMENT- 25

**Northwest Justice Project**
711 Capitol Way S, Ste 704
Olympia, WA  98501
Tel. (360) 753-3610  Fax (360) 753-0174

1    $250 against each defendant found liable; and (b) punitive damages. Ms. Engels is also entitled

2    to attorneys' fees and costs.

3    **G.    Seventh Cause of Action: Trespass (as to Defendant Crossroads, Defendant City of Shelton, Defendant Whitley and Defendant Moran)**

4

5        204.    Plaintiff reasserts and re-alleges the allegations as set forth above.

6        205.    The Court has jurisdiction to hear this state law claim under 28 USC § 1367

7    because it arises from the same set of facts that give rise to jurisdiction under Plaintiff's federal

8    claims.

9        206.    Without authority, as alleged above, Defendants intentionally entered Ms.

10   Engles's apartment.

11       207.    Defendants' actions damaged Ms. Engles.

12       208.    Defendant City of Shelton, as employer of Defendant Whitley and Defendant

13   Moran, is liable for their conduct.

14   **H.    Eighth Cause of Action: Assault (as to Defendant City of Shelton, Defendant Whitley and Defendant Moran)**

15

16       209.    Plaintiff reasserts and re-alleges the allegations as set forth above.

17       210.    The Court has jurisdiction to hear this state law claim under 28 USC § 1367 because

18   it arises from the same set of facts that give rise to jurisdiction under Plaintiff's federal claims.

19       211.    Without authority, as alleged above, Defendants arrested Ms. Engles and removed

20   her from her home.

21       212.    An assault occurs when there is an unlawful arrest.

22       213.    Defendants' actions damaged Ms. Engles.

23

24

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF,
AND DECLARATORY JUDGMENT- 26

214.     Defendant City of Shelton, as employer of Defendant Whitley and Defendant Moran, is liable for their conduct.

**I.      Ninth Cause of Action: Outrage (as to Defendant Crossroads)**

215.     Plaintiff reasserts and re-alleges the allegations as set forth above.

216.     The Court has jurisdiction to hear this state law claim under 28 USC § 1367 because it arises from the same set of facts that give rise to jurisdiction under Plaintiff's federal claims.

217.     Defendant Crossroads' conduct was extreme, outrageous and intolerable to a civilized community.

218.     Defendant Crossroads' conduct was done intentionally or recklessly.

219.     Defendant's actions caused Ms. Engles extreme emotional distress

**VI.  RELIEF REQUESTED**

Plaintiff hereby requests that the Court grant the following relief:

1.   Declaratory judgment stating that Defendant City of Shelton violated Plaintiff's right to procedural due process by depriving her of her home without an opportunity for a hearing;

2.   Declaratory judgment stating that Defendant City of Shelton violated Plaintiff's right to be free of warrantless search and seizure when they entered her home, took her purse, and arrested her;

3.   Grant temporary, preliminary, and permanent injunctive relief:

    a.   Prohibiting Defendant Crossroads from removing participants in any of their housing programs from their homes except by a civil eviction process;

    b.   Prohibiting Defendant City of Shelton from assisting with displacing tenants at residential property who claim an entitlement to reside there.

4.   Plaintiff's damages in an amount to be determined at trial;

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF,
AND DECLARATORY JUDGMENT- 27

**Northwest Justice Project**
711 Capitol Way S, Ste 704
Olympia, WA  98501
Tel. (360) 753-3610  Fax (360) 753-0174

5. Punitive damages as provided for by RCW 4.24.345;

6. That Plaintiff be awarded her costs and attorneys' fees as provided for by 42 U.S.C. § 1988, and any other applicable provision of statutory and common law;

7. That the Court grant such other relief as may be just and equitable.

DATED this 1st day of October, 2024.

NORTHWEST JUSTICE PROJECT

By /s/Carrie Graf
Carrie Graf, WSBA # 51999
Attorney for Plaintiff
711 Capitol Way South, #704
Olympia, WA 98501
Phone: (206) 707-0992
carrie.graf@nwjustice.org

/s/Scott Crain
Scott Crain, WSBA # 37224
Attorney for Plaintiff
401 – 2nd Avenue South, #407
Seattle, WA  98104
Phone: (206) 707-0900
scottc@nwjustice.org

/s/Tyler Graber
Tyler Graber, WSBA # 46780
711 Capitol Way South, #704
Olympia, WA 98501
Phone: 509-381-2315
tylerg@nwjustice.org

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF,
AND DECLARATORY JUDGMENT- 28

**Northwest Justice Project**
711 Capitol Way S, Ste 704
Olympia, WA  98501
Tel. (360) 753-3610  Fax (360) 753-0174